# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ROBERT RAYMOND JOHN WILDER,

    Petitioner,

v.                                             Case No. 5:16-cv-699-Oc-02PRL

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## **ORDER**

On December 5, 2016, the Court received Petitioner Wilder's petition under 28 U.S.C. § 2254 for writ of habeas corpus by a person in state custody. Dkt. 1. He filed an Amended Petition on December 20, 2016. Dkt. 5. Petitioner seeks relief from a 2014 Florida state court revocation of community control. *Id.* at 1. Respondents have filed a response in opposition, Dkt. 9, to which Petitioner replied, Dkt. 13. The Court finds that no hearing is necessary and DENIES the petition.

## BACKGROUND

In 2012 and 2013, Petitioner was charged in Citrus County for six felony and two misdemeanor offenses in three separate cases.[1] Pursuant to a global plea agreement, Petitioner was adjudicated guilty of the charges, sentenced to time served, placed on five-year drug offender probation, and his driver's license was suspended for two years. Dkt. 10-1 at 177-80. The sentencing scoresheet showed two prior scorable felonies and five prior scorable misdemeanors. Dkt. 10-3 at 77-79. Upon affidavits of Petitioner's violation of the conditions of probation filed in late 2013, the court revoked probation and imposed two years of community control followed by three years of drug offender probation.[2] Dkt. 10-2 at 20.

The next year, affidavits supporting a violation of community control for an incident of driving without a license were filed. Dkt. 10-2 at 28-32. Following the denial of a motion to suppress and the presentation of law enforcement testimony, the court found the violation proved by a preponderance of the evidence and

---

[1] Those charges include kidnapping, burglary of a conveyance with battery, grand theft, and serious drug offenses. Dkt. 5 at 2-5; Dkt. 10-1 at 177-78. The victim of the kidnapping alleged that, after a squabble with Petitioner's sister, Petitioner and his sister taped her to a chair, blindfolded her, and made her take a pill and drink something. Dkt. 10-2 at 83. She also alleged that Petitioner kicked her in the face and, at some time during the night, she was sodomized with a broom handle. *Id.* Apparently the victim's face and lips were scratched, her pubic hair and eyebrows were shaved, and her hair was cut short during the night. *Id.* The next day Petitioner and his sister washed and showered the victim, dropped her off alongside a road, and told her that if she reported the incident to law enforcement, they would kill her and her son. *Id.* The victim later signed a waiver of prosecution filed by defense counsel. Dkt. 10-3 at 1-3.

[2] Community control is "a form of intensive supervised custody in the community involving restriction of the freedom of the offender." Fla. R. Crim. P. 3.701. Community control and probation "involve[] different procedures and restrictions." *Skeens v. State*, 556 So. 2d 1113, 1113-14 (Fla. 1990). The trial court seemed, at times, to use the terms interchangeably. This does not affect the Court's analysis.

beyond a reasonable doubt.[3] Dkt. 10-1 at 123. Petitioner also admitted to the violation. Dkt. 10-1 at 112. The court revoked Petitioner's community control and sentenced him to sixty years' incarceration. *Id.* at 139. The sixty-year sentences were concurrent terms based upon the two first-degree felonies (which were punishable by life in prison). *Id.*

Petitioner appealed the revocation and sentence to the District Court of Appeal for the Fifth District of Florida (Fifth DCA). Dkt. 10-5 at 4. Petitioner voluntarily dismissed the appeal after his attorney filed an *Anders*[4] brief. *Id.* at 4, 26. Petitioner then filed, through counsel, a 3.850 motion for postconviction relief arguing an involuntary plea and ineffective assistance of counsel. Dkt. 10-5 at 57. The postconviction court denied the motion and the subsequent pro se motion for rehearing without an evidentiary hearing. Dkt. 10-5 at 34, 41. The Fifth DCA affirmed the denial. Dkt. 10-5 at 124.

Respondent acknowledges that the petition is timely and its one claim exhausted. Dkt. 9 at 4-5. Petitioner claims that his admission of the violation of community control was unlawfully induced, involuntary, and unknowing of the charges and consequences of the plea, and that he suffered related ineffective assistance of counsel.

---

[3] To sustain a violation of community control, the State must prove that the defendant willfully and substantially violated the conditions of supervision by a preponderance of the evidence. *Smith v. State*, 788 So. 2d 1131, 1132 (Fla. 2d DCA 2001).
[4] *Anders v. California*, 386 U.S. 738 (1967).

## LEGAL STANDARD

This petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA "establishes a highly deferential standard for reviewing state court judgments," *Parker v. Sec'y for Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003) (citation omitted), that does not allow relief from a state court conviction on a claim "'that was adjudicated on the merits in the State court proceedings' unless the state court's decision was '(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,'" *Nejad v. Attorney Gen., State of Ga.*, 830 F.3d 1280, 1288 (11th Cir. 2016) (quoting 28 U.S.C. § 2254(d)).

"Clearly established Federal law" means holdings of the U.S. Supreme Court "as of the time of the relevant state-court decision." *Id.* at 1288-89 (citation omitted). "Contrary to" requires a state court conclusion "opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 1289 (citations omitted) (alterations in original). The "unreasonable application" clause applies only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that

4

principle to the facts of the prisoner's case." *Id.* (citation omitted) (alterations in original).

A state court's factual determination, meanwhile, "is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Id.* (citation omitted). AEDPA "requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Id.* (citation omitted). This is a "demanding but not insatiable standard, requiring proof that a claim is highly probable." *Id.* (citation and internal quotation marks omitted).

Counsel is ineffective under the Sixth Amendment if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). But in the habeas context, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland*'s deferential standard,' then a federal court may not disturb a

5

state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

## DISCUSSION

The Court finds that a hearing is unnecessary, *see Turner v. Crosby*, 339 F.3d 1247, 1274-75 (11th Cir. 2003), and that habeas relief is unwarranted.

Petitioner claims that his admission of the violation of community control was unlawfully induced, involuntary, and unknowing of the charges and consequences of the plea, and that he suffered related ineffective assistance of counsel. Dkt. 5 at 10. Specifically, he states that (1) his counsel told him to reject a State offer of 102 months, (2) he was promised if he could pay the outstanding restitution his community control would be reinstated and that, if not, he would face a sentence of 8.5 years, (3) his counsel did not communicate with him about the case, and (4) counsel was at the time under investigation by the Florida Bar and was later disbarred. Dkt. 5 at 10. Petitioner also faults the postconviction court for not holding an evidentiary hearing or including attachments that refuted his claim in its order denying the 3.850 motion. *Id.* at 11.

But merely reviewing the April 24, 2014 violation of community control hearing, at which Petitioner was represented by counsel, demonstrates that habeas relief is unwarranted. The hearing began with Petitioner admitting his identity, that he was on community control, and that he was instructed on the conditions of

community control. Dkt. 10-1 at 63. Those instructions, as confirmed by the testimony of an officer, included refraining from driving without a license. *Id.* at 63-64, 67.

The State also called a deputy who was familiar with Petitioner and his facial and body features. *Id.* at 71. That deputy testified he was on duty on February 15, 2014 and checked that day to see whether Petitioner had a suspended license. *Id.* at 72. Later that morning, the deputy was positioned in front of Petitioner's address "running radar" on passing cars when he saw a motorcycle leave the residence. *Id.* at 74-75. The motorcycle had no tag. *Id.* at 78. Shortly after the deputy was able to recognize Petitioner as the individual operating the motorcycle, Petitioner did an abrupt U-turn and returned to his residence. *Id.* at 77.

The deputy conducted a traffic stop when the motorcycle pulled into the driveway. Petitioner got off the motorcycle, removed his helmet, and pleaded with the deputy. *Id.* at 79. As an explanation, Petitioner told the deputy that he got into an argument with his wife and did not want to hit her. *Id.* This operation of the motorcycle without a license formed the basis of Petitioner's violation of community control. There were later statements from Petitioner's wife that also confirmed Petitioner drove the motorcycle. *Id.* at 131.

After the court heard the officer's and deputy's testimony, Petitioner's counsel argued a motion to suppress the deputy's identification and observations of

7

Petitioner during the traffic stop. The court denied the motion. *Id.* at 104. The court then shifted gears to discuss Petitioner's violation. *Id.* at 107. In relevant part:

> COURT: [Petitioner] has not necessarily pled. I don't want to force him to do anything. I don't want to chill his constitutional rights. I've now heard, under oath, that he was on probation.
> . . .
> That the material terms and conditions of his probation were lawfully explained to him; that he has been identified by a law enforcement officer as the same person and has committed a new law violation . . . even though that case is still pending in county court. Nonetheless, I've heard now the -- basically the not even the synopsis. I've heard the final hearing.
> . . .
> COURT: At this point right now, if he would want to admit - -
> DEFENSE COUNSEL: Absolutely.
> COURT: That's all fine and well, but he doesn't necessarily need to because I've already heard the factual basis.
> …
> Does [Petitioner] want to make any statement under oath regarding . . . the violation of probation matter?
> DEFENSE COUNSEL: No, other than admit. I mean, he'll admit.
> . . .
> COURT: So then, [Petitioner], is it your desire after consultation -- you heard my -- you heard the court's ruling [on the motion to suppress]. While you may disagree with it, do you understand what the ruling is?
> DEFENDANT: Yes, sir, I do.
> COURT: Okey-doke. Now, then, do you want to admit or deny the allegations of the violation of probation?
> DEFENDANT: I'd like to admit to them.
> COURT: Very good. Has anyone threatened you, coerced you or forced you in this regard?
> DEFENDANT: No, sir.
> COURT: Are you presently under the influence of any alcohol or intoxicant that would negatively affect your good judgment here today?
> DEFENDANT: No, sir.

> COURT: Have you ever been found to be insane, incompetent or mentally challenged and not been restored to your capacity?
> DEFENDANT: No, sir.
> COURT: Now, then, this is an open admission. Do you understand at this point right now I'm not aware of anything? I know [counsel] has talked about things like he'd like to look for, which is reinstatement. He's even mentioned some numbers of three and four and five years, whatever, but I'm not bound to those recommendations by either side. Do you understand that?
> DEFENDANT: Yes, sir.
> COURT: Okay. Now, then, because you have elected, which you have the absolute right to, have I done anything objectively or subjectively that made you think that I was going to assess any kind of a sanction in this matter, whatever the sentence would be?
> DEFENDANT: No, sir.
> COURT: Now, you may have told the deputy in the case that Judge Howard might give you 30 years or something like that. That's the first I'm hearing of anything like that. But, nonetheless, have I communicated to you any number of what might be your sanction?
> DEFENDANT: No, sir.
> COURT: Very good. That having been said, do you need any additional time to go over these matters with your attorney . . . ?
> DEFENDANT: No, sir.
> THE COURT: Has he answered all of your questions to complete and utter satisfaction?
> DEFENDANT: Yes, sir.
> COURT: Have you also had at least the benefit, if not the actual consultation, with your family appearing behind you?
> …
> DEFENDANT: Yes. Yes. Yes. Yes.
> COURT: Okay. Do you want me to accept this admission to the violations of probation in all of your pending cases?
> DEFENDANT: Yes, sir.

Dkt. 10-1 at 107-12. After the extensive colloquy, the court then outlined the statutory maximum sentences in the consolidated cases, which included a sentence

9

of life imprisonment. *Id.* at 112-19. The court then asked once more whether Petitioner would maintain his plea of admission, which he answered in the affirmative. *Id.* at 115-16.

The court concluded by finding:

> that the plea is freely and voluntarily entered into after knowing waiver of rights. A factual basis has been established. And you expressed confidence, as well you should, with the excellent representations of counsel.
> . . .
> [F]irst of all, I find he has violated his probation. . . . I find by the greater weight or preponderance of the evidence that he's [Petitioner], that he was placed on probation and he materially violated it by picking up a new law violation, which has been proved beyond, first, certainly any proof evident -- or presumption besides the -- beyond the statutory evidentiary requirements. It's been proved beyond any reasonable doubt.

*Id.* at 116, 123.

The postconviction court relied on the above record in denying the claims Petitioner now brings to federal court. Dkt. 10-5 at 41, 43-44. The postconviction court first noted that in both his original plea agreement and at the violation hearing Petitioner acknowledged the charges and their maximum penalties, that he was not threatened or induced to enter the plea or otherwise promised any reward or leniency, and that the trial court was not bound by counsel's sentencing recommendation. *Id.* at 45-46. The postconviction court found the same true for Petitioner's claims of promises made to him or his family about the sentence. *Id.* at

46 ("[Petitioner's] claim that he was promised a lesser sentence, is conclusively refuted by the record; therefore, this claim is without merit.").

As for Petitioner's third and final claim, the postconviction court noted:

> [Petitioner] claims that trial counsel was ineffective because the post-conviction counsel requested the [Petitioner's] files and records without response [from trial counsel] and because trial counsel was under investigation by the Florida Bar and subsequently disbarred. However, trial counsel's failure to provide his file to the post-conviction counsel has no bearing on whether trial counsel's representation of [Petitioner] at that time was ineffective. Similarly, counsel's subsequent disbarment for unrelated matters has no bearing on whether counsel was ineffective during his representation of [Petitioner]. Thus, the Court summarily denies this claim.

*Id.* at 47. Rehearing was denied, *id.* at 34, and denial of postconviction relief was per curiam affirmed, *id.* at 124. The Court cannot find the postconviction court's determination unreasonable on the record presented.

Petitioner's claims of an involuntary plea and ineffective assistance of counsel are essentially one claim: The ineffective assistance of counsel induced Petitioner into making an involuntary plea. *See Calhoun v. Sec'y, Fla. Dep't of Corr.*, 607 F. App'x 968, 971 (11th Cir. 2015) ("[A] defendant, who pled guilty on the advice of counsel, may attack the voluntary and intelligent character of the plea by showing that counsel rendered ineffective assistance, described in *Strickland*."); *see also Wilson v. United States,* 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the

constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). Where a defendant enters a plea on the advice of counsel, the voluntariness of the plea "depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (citation omitted). A few points are worth noting at the outset.

Turning first to the nature of the allegedly induced and involuntary plea (and even assuming Petitioner's allegations are true), Petitioner does not claim mental illness or intoxication—topics addressed by the trial judge—or any other basis for an involuntary plea apart from being "induced by promises that if he could pay the outstanding restitution his probation would be reinstated." Dkt. 5 at 10. It was apparently defense counsel who made these promises.

But, as the postconviction court noted, the trial court engaged in an extensive colloquy with Petitioner that made clear—multiple times—the court was not required to follow any sentencing recommendations (including the possibility of reinstatement) and that Petitioner faced a statutory maximum of life imprisonment.[5] Petitioner does not specify how the trial court could have been any clearer. As phrased by the Supreme Court:

---

[5] This fact separates the case from others where defense counsel advised a defendant to enter "blind" plea without knowledge of the potential sentencing range. *E.g.*, *Esslinger v. Davis*, 44 F.3d 1515, 1530 (11th Cir. 1995). In fact, the Eleventh Circuit in *Esslinger* explicitly noted that "[w]e do not hold that an

> For the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison,* 431 U.S. 63, 73-74 (1977).

More troubling for Petitioner is that his admission merely supplemented other evidence proving a violation; the admission was, in other words, unnecessary. In fact, the trial court noted the factual basis for the violation *prior* to Petitioner's admission. Dkt. 10-1 at 108. Thus, as explained below, even an involuntary admission would not have affected the revocation of community control and imposition of a sixty-year sentence. Petitioner sets forth no defenses to the violation, or compelling ineffective assistance of counsel claim in this regard such as failure to investigate.

Indeed, to establish prejudice under *Strickland*, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). Regarding advice to reject a

---

attorney who recommends a blind plea inherently fails to perform as required by the Sixth Amendment." *Id.*

In the federal context, even a court's failure to question whether an individual admits to a probation violation freely and voluntarily has been deemed not plain error. *See, e.g.*, *United States v. Kravitsky*, 152 F. App'x 815 (11th Cir. 2005). The court in *Kravitsky* noted that because revocation proceedings are not part of a criminal prosecution, the plea colloquy requirements of Rule 11 do not apply. *Id.* at 818-19. There, the district court relied on a factual proffer from the government and the defendant's admission in finding a violation. *Id.* at 819.

favorable plea offer, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385; *see also Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012).

First, putting aside his self-serving claims to the contrary, it is unclear that, in the absence of counsel's advice, Petitioner would have chosen to accept any plea offer or would not have admitted guilt. Petitioner, of course, would still have been unaware the court planned to impose a sixty-year sentence. It is even unlikelier that the trial court would have accepted a deal of 102 months when the State recommended the guideline range of 106.5 months, Dkt. 10-1 at 127, and the court nonetheless deviated from that recommendation by a relatively wide margin. In doing so, the court noted Petitioner's criminal history, prior violations of probation, and risk of committing serious crimes in the future. *Id.* at 138-39.

What is more, the trial court did not even need Petitioner's admission to find a violation of community control. Indeed, the court heard unrefuted testimony from an officer and deputy that Petitioner had violated the conditions of community

14

control by driving with a suspended license. *See Woodson v. State*, 9 So. 3d 716, 717 (Fla. 2d DCA 2009) (citations omitted) ("Due process requires that the State prove an alleged violation of probation at a hearing *or* that the defendant enter a knowing admission to a violation before the trial court revokes the defendant's probation." (emphasis added)); *see also Barnes v. Fla. Dep't of Corr.*, 481 F. App'x 459 (11th Cir. 2012) (finding habeas relief unwarranted where trial court relied on State's evidence in finding violation). Thus, Petitioner is unable to establish that, with competent advice, there is a reasonable probability the result of the proceeding would have been different.[6]

Similarly, Petitioner does not connect trial counsel's contemporaneous Florida Bar investigation, lack of preparation for the violation hearing, or subsequent failure to provide files to postconviction counsel to any prejudice suffered at the proceeding. For starters, the Court does not see how neglecting to pass on files *after* the challenged proceeding could manifest deficient performance or affect the outcome of that past proceeding.

Secondly, there is no indication that the State bar investigation concerned conduct relating to counsel's handling of Petitioner's case. The attorney's eventual

---

[6] From Petitioner's point of view, presumably the "competent" advice would have been to accept the 102-month plea deal. Yet, putting aside the benefit of hindsight, it is not clear why this is so. There is no indication on the record the court planned to enter a sentence substantially greater than 102 months. That having been said, it is nonetheless deficient performance to provide "affirmative misadvice," *see Preston v. Sec'y, Dep't of Corr.*, 745 F. App'x 835, 838 (11th Cir. 2018) (citation omitted), which might include promising a particular sentence. In any event, Petitioner cannot establish prejudice.

suspension of practice, moreover, was based on conduct like failing to file pleadings and prosecute an appeal—not providing misguided advice on plea offers. Dkt. 13 at 10; *see also United States v. Mitchell*, 216 F.3d 1126, 1132 (D.C. Cir. 2000) (no ineffective assistance of counsel for unrelated bar disciplinary matters); *Hurel Guerrero v. United States*, 186 F.3d 275, 283 (2d Cir. 1999); *United States v. Coffee*, No. CR. 2:08CR124-WHA, 2009 WL 1286877, at *2 (M.D. Ala. May 8, 2009). And the allegations of lack of preparation are vague and conclusory, and, in any event, insufficient to establish prejudice.

Lastly, the state court's determination that, based on the record before it, an evidentiary hearing was unnecessary cannot by itself warrant habeas relief. The same is true for the state law issue of what a court must attach to its order[7]— provided there is no connection to a federal or constitutional claim like ineffective assistance of counsel. *See Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009). The Fifth DCA nonetheless requested and had before it the entire hearing

---

[7] Rule 3.850(f)(5) of the Florida Rules of Criminal Procedure provides that "[i]f the motion [for postconviction relief] is legally sufficient but all grounds in the motion can be conclusively resolved either as a matter of law or by reliance upon the records in the case, the motion shall be denied without a hearing by the entry of a final order. If the denial is based on the records in the case, a copy of that portion of the files and records that conclusively shows that the defendant is entitled to no relief shall be attached to the final order."

Petitioner complains that the postconviction court only attached to its order the plea form in the underlying cases and a four-page excerpt of the violation hearing transcript. Dkt. 5 at 11. The court seemed to attach the underlying plea agreement because it could not discern the basis of Petitioner's postconviction claim. Dkt. 10-5 at 45. ("It is not clear whether [Petitioner] is referring to his original Plea Agreement on July 15, 2013, or his admission of [violation of community control] on April 25, 2014, but it does not matter.").

16

transcript when the appellate court affirmed denial of the 3.850 motion. Dkt. 10-5 at 122, 128.

The question is still whether the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Here, like the state courts, the Court can make this determination by reference to the existing record, *see Cullen v. Pinholster*, 563 U.S. 170 (2011), which includes the complete transcript of the violation hearing.

It is moreover unclear what else an evidentiary hearing on the matter would add. This is unlike the allegations in *Machibroda* v. *United States*, 368 U.S. 487 (1962), with promises by the *prosecutor* and where the trial judge "wholly failed to inquire whether the guilty plea was made voluntarily before accepting it." Dkt. 13 at 3 (quoting *Allison*, 431 U.S. at 72). Another case relied upon by Petitioner, *Fontaine* v. *United States,* 411 U.S. 213 (1973), included allegations of—and hospital records documenting—mental illness and heroin addiction.

The allegations here, even if accepted as true and when viewed against the record of the plea hearing, demonstrate that the postconviction court was not unreasonable in finding no basis for habeas relief from a voluntary and knowing—yet ultimately unnecessary—admission of guilt. Rather, in the words of another

17

court, it seems that Petitioner "is merely attempting to avoid the consequences of violating the terms and conditions" of community control. *Simpson v. Fla. Parole Comm'n*, No. 8:04-CV-1808-T-17EAJ, 2006 WL 923759, at *13 (M.D. Fla. Apr. 10, 2006). Habeas relief is unwarranted.

## CERTIFICATE OF APPEALABILITY

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Proceedings for the United States District Courts. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327 (citation omitted).

The Court finds that Petitioner does not establish this requirement. The Court decides not to issue a certificate of appealability in the matter.

## CONCLUSION

The Court DENIES Petitioner's Amended Petitioner with prejudice. Dkt. 5. The Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Tampa, Florida, on July 29, 2019.

/s/ *William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record